# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| **CHRISTINA CHARLES**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**CAREER HORIZONS, INC. d/b/a TSD GLOBAL**,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case Number:** `1:19-CV-2260`

## CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff, CHRISINA CHARLES ("Plaintiff"), by and through the undersigned attorneys, brings this Complaint against Defendant, CAREER HORIZONS, INC., d/b/a TSD GLOBAL ("Defendant" or "TSD Global"), individually and on behalf of all similarly situated individuals, and states as follows:

## INTRODUCTION

1.      This is a class and collective action brought by Plaintiff on her own behalf and on behalf of all similarly situated current and/or former Customer Service Representative employees ("CSRs") of Defendant to recover for Defendant's willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendant's various call center locations, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary preliminary and

1

postliminary activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit 1, at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.")  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift job-related activities must be kept." *Id*.

3.      Plaintiff, and those similarly situated, were subjected to Defendant's policy and practice of failing to compensate its call center employees for their necessary pre-shift activities, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

4.      Plaintiff seeks a declaration that her rights, and the rights of the putative FLSA Collective Class, were violated; and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. §§ 201, *et seq*.

6.      This Court also has subject-matter jurisdiction over Plaintiff's Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.      Upon information and belief, Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.

8.      This Court has personal jurisdiction over Defendant because it does business within

this District in the State of Indiana.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## PARTIES

10.     Plaintiff, CHRISTINA CHARLES, is an individual who resides in the County of Marion, City of Indianapolis, Indiana.

11.     Plaintiff was employed by Defendant as an hourly employee from approximately November 2018 through April 2019 as a Customer Service Representative ("CSR").

12.     Plaintiff's most recent hourly rate was $10.00.

13.     Plaintiff regularly worked in excess of forty (40) hours per workweek.

14.     Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and her Consent to Sue is attached hereto as Exhibit 2.

15.     Defendant CAREER HORIZONS, INC., d/b/a TSD GLOBAL's mission is "[t]o provide sales, customer service and back-office services to our clients as an extension of their businesses, providing value, integrity, and expertise offer transportation customer service solutions that includes, but is not limited to, telephone calls, email, and chat services."[1]

16.     Defendant CAREER HORIZONS, INC. d/b/a TSD GLOBAL is incorporated in Indiana with its principal place of business located at 11711 N. Pennsylvania St. Suite 190, Carmel, IN, 46032. Defendant can be served through its Registered Agent, PATRICIA N. TOTTON, located at 5305 LAKEVIEW PARKWAY SOUTH DRIVE, INDIANAPOLIS, IN, 46268.

---

[1] http://tsdglobal.com/about-tsd-global/ (last visited May 30, 2019).

## **GENERAL ALLEGATIONS**

17.     The fundamental protections afforded by the FLSA include payment of premium overtime wages for all hours worked above forty (40) hours per week.

18.     Plaintiff and the other similarly situated individuals were, or are, employed by Defendant as hourly CSRs or other job titles performing similar job duties.

19.     Plaintiff was employed by Defendant as an hourly call center CSR employee from November 2018 until approximately April 2019.

20.     Defendant assigned Plaintiff to answer customer calls for Defendant's clients, for example, Sirius XM.

21.     Plaintiff's primary job duties were to answer questions from callers, obtain basic profile information, and discuss services offered by Defendant's clients.

22.     Plaintiff's most recent hourly rate was approximately $10 per hour.

23.     Throughout Plaintiff's employment with Defendant, she regularly worked at least 40 hours per workweek.

24.     Regardless of whether Plaintiff was scheduled to work a workweek totaling under 40 hours, scheduled to work a workweek totaling 40 hours, or scheduled to work a workweek totaling in excess of 40 hours, Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of her CSR job duties. Plaintiff was never compensated for this time worked off-the-clock.

25.     29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are

> closely related to the performance of the principal activity, such as
> attending roll call, writing up and completing tickets or reports, and
> washing and re-racking fire hoses.

26.     29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of

a principal activity are those closely related activities which are indispensable to its performance."

***Pre-Shift Off-the-Clock Work***

27.     Plaintiff was tasked with providing Defendant's clients with customer service by

use of Defendant's telephones, Defendant's computers, and the programs accessible from

Defendant's computers.

28.     Prior to clocking in to begin being paid, Defendant required Plaintiff, and all other

current and/or former hourly CSRs, to boot up their computers, launch and log into necessary

programs, servers, and applications, and log into Defendant's phone systems to ensure they were

ready to take their first call at their scheduled shift start. This pre-shift procedure regularly takes 10

minutes per shift, or even as much as 30 minutes or more if technical issues arise. Only after this

process was completed was Plaintiff allowed to clock-in to Defendant's timekeeping system at the

scheduled start of her shift.

29.     The pre-shift boot-up procedure was integral and indispensable to the performance

of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

30.     The unpaid pre-shift off-the-clock work performed by Plaintiff, and all other current

and/or former hourly CSRs, directly benefits Defendant.

***Defendant's Policy and Practice of Off-the-Clock Work Violated Federal and State Laws.***

31.     At all times relevant, Defendant suffered or permitted Plaintiff, and all other current

and/or former hourly CSRs, to routinely perform off-the-clock pre-shift work by not allowing its

employees to clock-in until *after* the pre-shift boot-up procedure was complete. Defendant would not

allow Plaintiff, and all other current and/or former hourly CSRs, to clock into the time keeping system

through Defendant's system until the boot-up process was complete.

32.     Defendant knew, or should have known, that its employees are required to be paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 553.221.

33.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CSRs, for their off-the-clock pre-shift compensable work performed in any amount.

34.     Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires it to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable off-the-clock pre-shift work performed.

35.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CSRs, for their off-the-clock pre-shift compensable work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

36.     In reckless disregard of the FLSA protections afforded to Plaintiff and similarly situated individuals, Defendant adopted and then adhered to its policy and plan that denied payment of overtime premiums at one-and-one half times the regular rate for hours worked in excess of forty (40) in a workweek.

***Recordkeeping.***

37.     29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

38.     The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

39.     Upon information and belief, Defendant failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA.

40.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

41.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

42.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on her own behalf and on behalf of:

> *All current and former Customer Service Representatives or other job titles performing similar job duties employed by Career Horizons, Inc., d/b/a TSD Global at any time during the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

43.     Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

44.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*:  With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff.  The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendant's practices, policy, or plan of not paying their call center for their pre-shift compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

45.     Upon information and belief, Plaintiff estimates that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

46.     Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether she is entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[2]

47.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(4) on behalf

of a putative Class defined to include:

> *All current and former Customer Service Representatives or other job titles performing similar job duties employed by Career Horizons, Inc., d/b/a TSD Global at any time during the last three years.*

(hereinafter referred to as the "Nationwide Class"). Plaintiff reserves the right to amend this

definition as necessary.

48.    *Numerosity*:  The members of the Nationwide Class are so numerous that joinder

of all members in the case would be impracticable, and the disposition of their claims as a Class

will benefit the parties and the Court. The precise number of Class members should be readily

available from a review of Defendant's personnel and payroll records.

49.    *Commonality/Predominance*:   There is a well-defined community of interest

among Nationwide Class members and common questions of both law and fact predominate in the

action over any questions affecting individual members. These common legal and factual questions

include, but are not limited to, the following:

a.    Whether Defendant offered to pay Plaintiff and the Nationwide Class certain rates (depending on the technical job titles) per hour for each hour worked as CSRs;

b.    Whether Plaintiff and the Nationwide Class accepted Defendant's offer by performing the essential functions of the job;

c.    Whether Defendant breached the contract by failing to pay Plaintiff and the Nationwide Class for each and every hour worked, whether pre- or post-shift; and

---

[2] To the extent the Court finds, or Defendant argue, the employment relationship between itself and its CSRs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's and the Class' quasi-contractual claims (Count IV).

d.   Whether Plaintiff and the Nationwide Class were damaged.

50.      *Typicality*:  Plaintiff's claims are typical of those of the Nationwide Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Nationwide Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Nationwide Class members: whether the Nationwide Class members were employed under an implied contract to be paid for each and every hour worked by Defendant.

51.      *Adequacy*:  Plaintiff will fully and adequately protect the interests of the Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Class.

52.      *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Nationwide Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

53.     The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Nationwide Class within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and their counsel know of no unusual difficulties in the case and Defendant have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

54.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

55.     At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*

56.     Defendant is engaged in interstate commerce or the production of goods for commerce, as defined by the FLSA.

57.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

58.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

59.     The position of Customer Service Representative is not exempt from the FLSA.

60.     Defendant's other job titles performing similar Customer Service Representative job duties are not exempt from the FLSA.

61.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

62.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

63.     Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

64.     Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

65.     Defendant's violations of the FLSA were knowing and willful.

66.     By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated call former hourly CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to current and former hourly CSRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

67.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

68.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### BREACH OF CONTRACT
### (National Breach of Contract Class Action)

69.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

70.     At the time Plaintiff and the Nationwide Class were hired by Defendant, Defendant offered to pay Plaintiff and the Nationwide Class certain rates per hour for each hour worked as a CSR. Each Nationwide Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepare as part of their regular business activities.

71.     Plaintiff and the Nationwide Class accepted the offer and worked for Defendant as CSRs.

72.     Plaintiff and the Nationwide Class also accepted the offer by their performance— i.e., reporting for work and completing the tasks assigned to them.

73.     Plaintiff's work, and the work of the Nationwide Class, required pre-shift boot up time.

74.     Plaintiff and every other Nationwide Class member performed under their contract by doing their jobs in addition to carrying out the pre-shift activities that Defendant required.

75.     Upon information and belief, Defendant does not allow its employees to clock in to begin being compensated until after the pre-shift boot up procedures are complete.

76.     Despite being required to complete these pre-shift job duties, Plaintiff and the Nationwide Class were not compensated at their hourly rate for their work performed.

77.     By failing to pay Plaintiff and the Nationwide Class for the pre-shift boot up time, Defendant breached its contract with Plaintiff and the Nationwide Class to pay their hourly rate for each hour worked.

78.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff's and other Nationwide Class members' time spent doing pre-shift activities, which is a fundamental part of an employer's job.

79.     In sum, the facts set forth above establish the following elements and terms of the contract:

    a.     Offer: a set hourly rate for each hour worked as a CSR;

    b.     Acceptance: Plaintiff and the Nationwide Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant);

    c.     Breach: Defendant did not pay Plaintiff and the Nationwide Class for each hour (or part thereof) worked; and,

    d.     Damages: By failing to pay Plaintiff and the Nationwide Class their hourly rate for each hour worked, Plaintiff and the Class were damaged in an amount to be proven at trial.

80.     These claims are appropriate for nationwide class certification under Rules (b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

81.     As a direct and proximate cause of Defendant's breach, Plaintiff and the Nationwide Class were damaged at an amount to be proven at trial.

## COUNT III

## QUASI-CONTRACTUAL REMEDIES
## UNJUST ENRICHMENT

82.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

83.    Upon information and belief, Plaintiff's and every other Nationwide Class members' pre-shift boot up time provided valuable work and income for Defendant; namely, compensation to Defendant for completing customer service activity that directly benefited Defendant.

84.    *Pre-Shift Boot up Time*: Plaintiff and the Nationwide Class were unable to perform any job function without booting up and logging in to their computer and required programs. In short, in order to start their work of fielding customer calls precisely at their designated start time, Plaintiff and the Nationwide Class worked off-the-clock before their shift began. Without the pre-shift boot-up time, Plaintiff and the Nationwide Class were unable to take customer calls at their designated start time. Further, upon information and belief, Defendant do not allow their employees to clock in to begin being compensated until after the pre-shift procedures are complete.

85.    By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary pre-shift boot up activities, Defendant have been unjustly enriched at the expense of Plaintiff and the Nationwide Class in an amount to be determined at trial.

86.    By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary activities, Defendant also saved itself hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff's and Nationwide Class members' benefit.

87.    It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Nationwide Class without compensation.

88.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States

89.     As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the

Nationwide Class were harmed at an amount to be proven at trial.

**WHEREFORE**, Plaintiff requests the following relief:

A.  An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

B.  An Order certifying this action as a class action (for the Rule 23 Breach of Contract Nationwide Class or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C.  An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

D.  An Order designating the Plaintiff to act as the Nationwide Class Representative on behalf of all similarly situated individuals for both the FLSA Collective and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

E.  An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

F.  An Order declaring that Defendant violated its obligations under the FLSA;

G.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid minimum wages and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff' regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week for the past three years for the FLSA Class;

H.  An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime found owing to Plaintiff under the FLSA;

I.  An Order awarding reasonable attorney fees and costs incurred by Plaintiff in filing this action;

J.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

K.  An Order awarding such further relief as this court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Date:  June 6, 2019                                        Respectfully submitted,


HOVDE DASSOW & DEETS, LLC

By:    s/Robert T. Dassow
       Robert T. Dassow, #15145-64
       10201 N. Illinois Street, Suite 500
       Indianapolis, IN 46290
       Telephone: (317) 818-3100
       Facsimile: (317) 818-3111


Of Counsel:

s/ Jacob R. Rusch
Jacob R. Rusch (MN Bar No. 391892)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
jrusch@johnsonbecker.com

*Attorneys for Plaintiffs*

# EXHIBIT 1



**U.S. Department of Labor**
Wage and Hour Division

(Revised July 2008)

# Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the FLSA to employees working in call centers.

### Characteristics

A call center is a central customer service operation where agents (often called customer care specialists or customer service representatives) handle telephone calls for their company or on behalf of a client.  Clients may include mail-order catalog houses, telemarketing companies, computer product help desks, banks, financial services and insurance groups, transportation and freight handling firms, hotels, and information technology (IT) companies.

### Coverage

If the annual dollar volume of a call center's sales or business is $500,000 or more, and the enterprise has at least two employees, all employees of the enterprise are covered by the FLSA on an "enterprise" basis.  An enterprise may consist of one establishment, or it may be made up of multiple establishments.

Additionally, the FLSA also provides an "individual employee" basis of coverage.  If the gross sales or volume of business done does not meet the requisite dollar volume of $500,000 annually, employees may still be covered if they individually engage in interstate commerce, the production of goods for interstate commerce, or in an occupation closely related and directly essential to such production.  Interstate commerce includes such activities as transacting business via interstate telephone calls, the Internet or the U.S. Mail (such as handling insurance claims), ordering or receiving goods from an out-of-state supplier, or handling the accounting or bookkeeping for such activities.

### Requirements

Covered nonexempt employees are entitled to be paid at least the federal minimum wage as well as overtime at time and one-half their regular rate of pay for all hours worked over 40 in a workweek.  (This may not apply to certain executive, administrative, and professional employees, including computer professionals and outside sales, as provided in Regulations 29 CFR 541).

The FLSA requires employers to keep records of wages, hours, and other items, as specified in the recordkeeping regulations.  With respect to an employee subject to both minimum wage and overtime provisions, records must be kept as prescribed by Regulations 29 CFR 516.  Records required for exempt employees differ from those for non-exempt workers.

The FLSA also contains youth employment provisions regulating the employment of minors under the age of 18 in covered work, as well as recordkeeping requirements.  Additional information on the youth employment provisions is available at www.youthrules.dol.gov.

**Typical Problems**

Hours Worked:  Covered employees must be paid for all hours worked in a workweek.  In general, "hours worked" includes all time an employee must be on duty, or on the employer's premises or at any other prescribed place of work, from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday.  Also included is any additional time the employee is allowed (i.e., suffered or permitted) to work.  An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails.

Rest and Meal Periods:  Rest periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked.  *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal.

Recordkeeping:  A daily and weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept.

Overtime:  Earnings may be determined on an hourly, salary, commission, or some other basis, but in all such cases the overtime pay due must be computed on the basis of the regular hourly rate derived from all such earnings.  This is calculated by dividing the total pay (except for certain statutory exclusions) in any workweek by the total number of hours actually worked.  See Regulations 29 CFR 778.

Salaried Employees:  A salary, by itself, does not exempt employees from the minimum wage or from overtime.  Whether employees are exempt from minimum wage and/or overtime depends on their job duties and responsibilities as well as the salary paid.  Sometimes, in call centers, salaried employees do not meet all the requirements specified by the regulations to be considered as exempt.  Regulations 29 CFR 541 contain a discussion of the requirements for several exemptions under the FLSA (i.e., executive, administrative, and professional employees – including computer professionals, and outside sales persons).

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**                                                    **1-866-4-USWAGE**
Frances Perkins Building                                                    TTY: 1-866-487-9243
200 Constitution Avenue, NW                                                    **Contact Us**
Washington, DC 20210

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **CHRISTINA CHARLES**, individually and on behalf of all similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>**CAREER HORIZONS, INC. d/b/a TSD GLOBAL**,<br><br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1:19-CV-2260

**Case Number:**

**CONSENT TO SUE**

1.  I understand this lawsuit against CAREER HORIZONS, INC. D/B/A TSD GLOBAL, asserts claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and concerns Defendant's alleged failure to pay overtime wages for off-the-clock work at any time in the last three years.

2.  I hereby consent to opt-in and join and become a Plaintiff in this lawsuit and be bound by the Court, whether favorable or unfavorable, to any settlement of this action.

3.  I hereby designate Johnson Becker, PLLC to represent me in this lawsuit.

Signature: _Christina charles (May 29, 2019)_____   Date: May _____