UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |
|---|---|
| **CHRISTINA CHARLES**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**CAREER HORIZONS, INC. d/b/a TSD GLOBAL**,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:19-cv-02260-RLY-MJD<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW SUPPORTING**
**UNOPPOSED MOTION FOR COURT APPROVAL OF FLSA SETTLEMENT**

On June 6, 2019, Plaintiff Christina Charles initiated this Action against Career Horizons, Inc., alleging overtime violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. Defendant disputes Plaintiff's allegations in their entirety. Following informal discovery and more than a year of hard-fought and adversarial negotiations, the parties carefully arrived at an arms-length settlement in this matter. Considering the disputed issues of law and fact and the uncertainty of protracted litigation, the Parties have agreed to settle the above-entitled action. The terms of the Parties' agreement are set forth in the Settlement Agreement, attached hereto as Exhibit 1. Plaintiff, by her undersigned attorneys, moves this Court for an order granting this Unopposed Motion for Court Approval of FLSA Settlement as a fair and reasonable compromise of a *bona fide* dispute in a contested litigation. The Parties agree that upon Court approval of this Unopposed Motion, the lawsuit shall be dismissed with prejudice.

## I.  FACTUAL AND PROCEDURAL BACKGROUND.

### A.  *The Litigation to Date.*

Plaintiff imitated this action on June 6, 2019, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and certain Rule 23 claims for breach of contract. *See* Dkt. No. 1. In hopes of facilitating early potential resolution, following numerous meet-and-confers, the Parties collectively worked to narrow the scope of the claims at issue and streamlined the litigation. To that end, Plaintiff filed an Amended Complaint on September 27, 2019, and the Parties stipulated to FLSA Conditional Certification in the interest of efficiently and potential resolution only. *See Stipulation Regarding Dissemination of Notice*, Dkt. No. 22. After agreed-upon conditional certification and the dissemination of FLSA collective action notice, 185 Opt-in Plaintiffs joined this action. The Parties immediately began discussing the parameters for a potential early resolution and the informal exchange of information and data required to assess the allegations in the Amended Complaint. The Parties executed a Memorandum of Understanding paving the way for discovery to commence and, if needed, mediation.

While the Parties collectively worked together in good faith to resolve the litigation, the Parties continued to wholly dispute liability as alleged in the Amended Complaint. Defendant maintains that it is not liable for *any* damages arising from the Amended Complaint and that Plaintiffs are properly compensated for all hours worked. Conversely, Plaintiffs' position remains that Defendant did not adequately compensate them for all time worked. However, following negotiations and careful consideration of the strengths, weaknesses, risks, and the costs of continued litigation and trial, the Parties reached an agreement to resolve the litigation. The Settlement Agreement represents the Parties' final expression of the resolution.

## II. SUMMARY OF SETTLEMENT TERMS.

The Parties agreed to settle the claims of Plaintiffs, inclusive of attorneys' fees and costs, for a total settlement amount of $42,500. A copy of the Settlement Agreement is attached as Exhibit 1. For the Court's convenience, the following paragraphs summarize the Settlement Agreement's key terms. The settlement payment will be divided among Plaintiffs as described in the Settlement Agreement as specified in Exhibit A.

Plaintiff Charles and the Opt-In Plaintiffs will release Defendant from all wage and hour claims or causes of action, including under the Fair Labor Standards Act and any similar state law claims or other theories under which employees can seek wages and overtime compensation, arising from three years prior to the filing of this lawsuit through the date of approval of this settlement, for unpaid minimum wages and overtime that were asserted in the lawsuit. The full versions of Plaintiffs' releases are set forth in the Agreement.

Defendant will be responsible for procuring each Plaintiff's settlement check and providing them to Plaintiff's Counsel. Plaintiff's Counsel will administer the settlement by mailing all checks to each individual Plaintiff, in addition to skip-tracing and resending checks to those Plaintiffs whose checks are returned as undeliverable.

## **ARGUMENT**

## I. THE ONE-STEP APPROACH FOR FLSA SETTLEMENT APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTIONS.

Although the Seventh Circuit has not set forth specific guidelines for approval of a settlement of FLSA claims, district courts in the Seventh Circuit have followed the one-step approval guidelines set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See Knox v. Jones Grp.*, No. 15-cv-1738, 2017 WL 3834929, at *1 (S.D. Ind. Aug. 31, 2017) ("[a] district court should approve an FLSA collective action

settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties.") (citing *Lynn's Food Stores* at 1352-54). This is because "Rule 23 actions are fundamentally different from collective actions under the FLSA[.]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). In a Rule 23 class action, an individual must affirmatively opt-out if they do not want the decisions of the court and the fate of the class representative to determine their claim. Unlike a Rule 23 class action, plaintiffs in an FLSA collective action *must affirmatively join the lawsuit by opting-in*. The opt-in requirement removes the due process concerns that a court must address when determining whether a settlement is fair in a Rule 23 class action. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

Federal courts in the Seventh Circuit regularly apply the one-step approach to determine whether an FLSA settlement should be approved. *See Knox v. Jones Grp.*, 2017 WL 3834929, at *2 (stating "[a] one-step settlement approval process is appropriate"); *Gallant v. Arrow Consultation Services, Inc.*, No. 1:19-cv-00925-SEB-MPB, 2020 WL 2113399, *2 (S.D. Ind. May 4, 2020) ("Court can review and approve the settlement agreement without holding a final fairness hearing"); *Chen v. Genesco, Inc.*, No. 1:18-cv-00690-SEB-TAB, 2020 WL 360517, at *3-4 (S.D. Ind. Jan. 22, 2020) (applying one-step approval process); *Wilkinson v. RM Auctions, Inc.*, 1:20-CV-77-HAB, 2020 WL 5946573, at *1 (N.D. Ind. Oct. 6, 2020) (applying one-step approval process); *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *2 (N.D. Ind. Jan. 4, 2019) (same); *see also Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, *2 (N.D. Ill. Apr. 16, 2018) (citing cases).

**II.  THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE.**

In the "context of suits brought directly by employees against their employer," under

4

Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: if the parties present a proposed settlement to the court that was reached as a result of contested litigation and the settlement is a fair and reasonable resolution of a *bona fide* dispute between the parties, then the court may approve the FLSA settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1352-54. Accordingly, before this Court may approve the parties' agreed FLSA settlement, the Court must be satisfied that (1) the settlement was the product of "contested litigation"; and (2) the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties.

### A. *The FLSA Settlement is a Direct Result of Vigorously Contested Litigation.*

There is no question the Settlement Agreement before the Court is a direct result of vigorously contested litigation. *See generally* Dkt. No. 18. Defendant consistently denied liability throughout the entirety of this litigation, and asserted multiple affirmative defenses, including that work performed by Plaintiffs did not constitute compensable work. *Id.* at 18-20. Defendant also contends that a substantial number of Opt-In Plaintiffs have no timely claims, and others are not entitled to unpaid overtime even under the factual scenarios alleged in the Amended Complaint. Similarly, Plaintiffs position remains that Defendant did not adequately compensate them for all time worked. Opposing positions on the issue of liability issue is in essence the definition of "contested litigation."

### B. *The FLSA Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.*

To determine whether a settlement is "fair and reasonable," courts often analyze the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) does the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, is the settlement is fair and reasonable.

*Knox*, 2017 WL 3834929, at *1 (citing *Cannon v. Time Warner NY Cable LLC*, No. 13-cv-02521-RM-MJW, 2015 WL 4498808 (D. Colo. July 24, 2015)); *see also Soto, Inc.*, 2018 WL 1875296, *1 (applying same factors).

> 1. *The Parties Fairly and Honestly Negotiated the Settlement.*

Courts can rely on the adversarial nature of FLSA litigation resulting in a settlement as indicium of fairness. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354. Here, the negotiated settlement was reached in an adversarial fashion, after more than a year of adversarial back and forth among counsel, through arm's length negotiations between capable attorneys who have extensive experience with FLSA wage and hour claims. The Parties reached a settlement agreement after two years of litigation, significant back and forth, and the exchange of voluminous documents and employment records by Defendant. Such arm's-length negotiations conducted by competent counsel constitute prima facie evidence of a fair settlement. *See Campbell v. Advantage Sales & Marketing LLC*, No. 1:09-cv-01430, 2012 WL 1424417, *2 (S.D. Ind. Apr. 24, 2012) (finding case litigated for two years contentious); *Cole v. Bellar Construction Management, Inc.*, No. 3:20-cv-278, 2021 WL 2571236, *1 (N.D. Ind. June 22, 2021) (finding contentious litigation where only written discovery was exchanged but months of litigation remained); *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("[W]here . . . a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation by capable counsel, it is presumptively fair."); *see also Cannon*, 2015 WL 4498808, at *2 (finding first factor satisfied after settlement reached from attorneys' arms-length negotiations in litigation pending for almost two years). As such, this factor weighs in favor of approving the Settlement Agreement.

> 2. *Serious Questions of Law and Fact Exist That Placed the Ultimate Outcome of the Litigation in Doubt.*

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the

viability of Defendant's affirmative defenses. Plaintiffs alleged that Defendant violated the FLSA by allegedly failing to pay Plaintiffs for the time they spent booting up their computers to service Defendant's clients before Plaintiffs' scheduled shift start time. *See generally Am. Compl.*, Dkt. No. 16. Plaintiffs allege this resulted in Defendant failing to pay proper overtime premiums for all hours worked. *Id.* The FLSA is clear that an employer must pay hours in excess of 40 per workweek at an overtime premium of not less than one and one-half times the employee's regular rate of pay. *See* 29 U.S.C. § 207(a). Defendant, on the other hand, maintains that even if any time was spent by Plaintiffs booting up their computer, such time did not constitute compensable work and that the *de minimis* rule applied. *See generally Answer to Pl.'s Am. Compl.*, Dkt. No. 18. Defendant also contends that many of Plaintiffs' claims are partially or wholly time-barred, and that a substantial portion of the Opt-In Plaintiffs are not entitled to overtime even under the allegations in the Amended Complaint. When a defendant denies material facts, denies any liability to Plaintiffs' allegations, and the parties vigorously defend their positions throughout the litigation, a *bona fide* dispute exists between the parties.

If the litigation continues, both parties face obstacles and uncertainties. Further written discovery, depositions, a potential motion for decertification of the conditionally-certified FLSA collective action, motions for summary judgment, and a potential trial all await the Parties if a settlement is not reached. For example, even if Plaintiffs ultimately prevail on liability, Plaintiffs must prove the amount of damages each Plaintiff suffered. This will require more written discovery and depositions. Courts have found settlement fair and reasonable when a "case is in its early stages and litigating [a] case to its conclusion on the merits could entail considerable time and expense." *Honeycutt v. 1407 LLC*, No. 1:20-CV-0006-HAB, 2020 WL 2542642, *2 (N.D. Ind. May 19, 2020). Here, outstanding legal and factual issues place the outcome of the litigation in

doubt for all parties and therefore this factor weighs toward approval of the Settlement Agreement.

### 3. *The Value of Immediate Settlement is Significant.*

The pro rata share of the settlement each Plaintiff will receive is set forth as Exhibit A to the Settlement Agreement. Importantly, while the Opt-In Plaintiffs' prospects after a trial are far from certain, and after which many Opt-In Plaintiffs might not recover at all, under the Settlement Agreement each and every Opt-In Plaintiff will have a recovery of at least $50.00. Each Plaintiff is set to receive a portion of their alleged damages based on the actual amount of hours, and days, they worked for each workweek. The highest recovery will be $999.05, and the average recovery will be $97.26. As established above, fundamental questions of law and fact exist which place the ultimate outcome of the litigation in doubt and "the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation." *Cannon*, 2015 WL 4498808, at *2. For example, were this litigation to continue towards decertification, dispositive motion practice, and trial, it is possible Defendant could prevail thus extinguishing any recovery by any Plaintiff for their alleged damages. As such, this factor weighs in favor of approving the Settlement Agreement.

### 4. *The Parties Support the Settlement.*

As counsel for the parties and this Court well understand, litigation is an inherently risky process. Plaintiffs and Defendant are cognizant of the amount of time this matter has been pending before the Court and that continuing to litigate is likely to consume many more months, if not years, should either party wish to appeal a final judgment. The parties have comprehensive knowledge of the facts and extensive knowledge of the legal issues relating to the respective claims and defenses. Further, the parties conducted sufficient informal discovery on which to base an informed assessment of the proposed settlement. Based on Plaintiffs' Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour

collective actions, Plaintiffs' Counsel believes the settlement is both fair and reasonable. As Plaintiffs and their Counsel support the settlement, as do Defendant and Defendant's Counsel, it is appropriate for the Court to place significant weight on the endorsement of this proposed settlement. As such, this final factor weighs in favor of approving the Settlement Agreement.

      **C.**    ***The Incentive Fee Award Should be Approved.***

The proposed settlement includes an incentive fee award of $1,250 to Named-Plaintiff Charles. Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Knox*, 2017 WL 3834929, at *2 (citing *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012)). Accordingly, incentive awards are commonly awarded to those who serve the interests of the class. *Id.* The role of Charles as the Named-Plaintiff in this litigation was crucial as she initiated the lawsuit, reviewed and approved the Complaint and the Amended Complaint, and conferred with Plaintiffs' Counsel continuously throughout the litigation. Without Plaintiff Charles coming forward, this litigation would not exist and the other 185 Opt-In Plaintiffs in this matter would not be receiving a payment. Accordingly, this Court should approve Charles' incentive fee award.

**III.**    **PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED.**

The fee-shifting provision of the FSLA allows settlement agreements to include an award of reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b) ("The court in such an action . . . allow a reasonable attorney's fee to paid by the defendant, and costs of the action"); *Gallant*, 2020 WL 2113399, at *4 (awarding portion of settlement fund to attorneys' fees); *Chen*, 2020 WL 360517, at *5 (applying percentage approach); *Wilkinson*, 2020 WL 5946573, at *1 (awarding

9

portion of settlement fund to attorneys' fees); *Heuberger*, 2019 WL 3030312, at *4 (applying lodestar method); *Knox*, 2017 WL 3834929, at *4-5 (applying lodestar method). Generally, in collective action wage-and-hour cases (such as this case), smaller amounts of individual damages are owed to the members of the collective; however, the amount of work it takes the attorneys to be successful in a collective action lawsuit is considerable. The fee shifting provision of the FLSA encourages counsel to represent employees in lawsuits they might not otherwise be able to. *See Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'") (internal citations omitted); *Clover v. Shiva Realty of Mulberry, Inc.*, No. 10-cv-1702, 2011 WL 1832581, at *4 (S.D.N.Y. May 13, 2011), *aff'd sub nom. Clover v. Gobindram*, 479 F. App'x 402 (2d Cir. 2012) (noting the purpose of the FLSA's fee-shifting provisions emphasizing, "Congress enacted fee-shifting statutes . . . to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole"); *Helton v. Factor 5, Inc.*, No. 10-cv-04927 SBA, 2015 WL 428576, at *4 (N.D. Cal. Jan. 30, 2015) (emphasizing the congressional "intent behind § 216(b) was to allow employees to obtain payment owed under the FLSA in court without the employee incurring legal fees and expenses, and to encourage attorneys to take FLSA cases") (quoting *Pickett v. Beard*, No. 1:13-cv-0084, 2014 WL 467330, at *5 (E.D. Cal. Feb. 5, 2014)).

Reasonable attorneys' fees may be determined using the lodestar approach. *See Knox*, 2017 WL 3834929, at *4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In FLSA cases, courts have rejected the notion that attorneys' fee awards must be proportionate to plaintiff's recovery. *Id.* at *5 (awarding $675,000 in attorneys' fees in a $1,300,000 settlement based on the lodestar method). "Given the nature of the claims under the F.L.S.A., it is not uncommon that attorney fee

requests can exceed the amount of the judgment in the case by many multiples." *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 342 (5th Cir. 2007). That said, courts also may use the percentage method, where the court determines the reasonableness of the percentage of the attorneys' fee as compared to the total settlement fund. *See Gallant*, 2020 WL 2113399, at *4 (finding an attorneys' fee award of one third of the total settlement amount reasonable).

Here, the Settlement Agreement contemplates $23,207.45 in attorneys' fees *and* costs.[1] Plaintiffs' Counsel, with the inclusion of Local Counsel, incurred approximately $75,000.00 in attorneys' fees litigating this case. *See* Declaration of Jacob R. Rusch ("*Rusch Dec.*"), attached as Exhibit 2, at ¶ 2. However, Plaintiffs' Counsel is significantly discounting these fees to a substantially lower amount in order to help resolve this litigation in a timely manner. Accordingly, Plaintiffs' Counsel only seeks $17,440.37 in attorneys' fees. This represents a ~77% discount of the total attorneys' fees in this matter. As such, the Court should find the amount awarded to Plaintiffs' Counsel for attorneys' fees in the proposed settlement reasonable no matter which approach is used.

Further, courts award as costs in FLSA cases taxable costs as governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54 and nontaxable expense costs are allowed under statutory authority to award reasonable out-of-pocket expenses incurred in prosecuting the case, including costs for case-related travel, electronic research, court fees, court reporters, postage and courier fees, working meals, photocopies, telephone calls, and travel among other reasonable costs. *Gallant*, 2020 WL 2113399, at *4 (awarding pro hac vice fees, postage, mediator's fees, court

---

[1] The numbers noted in the Settlement Agreement Section 3(a) have been updated to reflect a $50.00 Settlement Payment to Brooke Watson who was inadvertently not included in the original Distribution Spreadsheet. The $50.00 Settlement Payment is being deducted from the attorneys' fees portion of the Settlement Fund. As such, the FLSA Settlement Fund is to be distributed as follows: FLSA Settlement Fund: $18,042.55; Service Award: $1,250.00; and attorneys' fees and costs: $23,207.45.

fees, and research costs); *Chen*, 2020 WL 360517, *5; *Wilkinson*, 2020 WL 5946573, * 1; *Knox*, 2017 WL 3834929, *3.

To date, Plaintiffs' Counsel's costs incurred in litigating this action total approximately $5,767.08—not including future costs to effectuate the settlement. *See* Rusch Dec., at ¶ 3. These costs include the costs of filing the action, process servicing, legal research, and, significantly, postage costs and notice administration costs. *See id.* All costs incurred were not only reasonable, but necessary to prosecute and resolve this litigation. Importantly, the requested attorneys' fees and costs do *not* take into consideration future time Plaintiffs' Counsel will spend fulfilling their obligations under the Agreement or the administration of the settlement payments to each of the 186 individual Plaintiffs. *See id.* The Parties negotiated attorneys' fees and costs separate and apart from any individual damages award; thus, no attorneys' fees or costs are being deducted from any award to the Plaintiffs. Accordingly, the Court should also award Plaintiffs their reduced attorneys' fees and out-of-pocket costs totaling $23,207.45.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order granting this Unopposed Motion for Court Approval of FLSA Settlement.

Dated: July 28, 2021                                Respectfully submitted,

*/s/ Jacob R. Rusch*
Jacob R. Rusch (MN Bar No. 391892)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: jrusch@johnsonbecker.com
*Trial Counsel for Plaintiffs*

Robert T. Dassow (IN Bar No. 15145-64)
**HOVDE DASSOW & DEETS, LLC**

12

10201 N. Illinois Street, Suite 500<br>
Indianapolis, IN 46290<br>
Telephone: (317) 818-3100<br>
Fax: (317) 818-3111<br>
Email: rdassow@hovdelaw.com<br>
*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2021, a copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Jacob R. Rusch*
Jacob R. Rusch